May it please the Court, Matthew George for the Attorney General. I'd like to reserve three minutes and I'll watch the clock for that. Thank you. The District Court erred in its allocation of the burden and quantum of proof in this case. It also clearly erred in its factual findings regarding the birthplace of Petitioner's grandmother Maria. The District Court misallocated the burden and quantum of proof for citizenship determination. The District Court applied the Removability Burden Shifting Scheme and held Petitioner to a mere burden of production of substantial credible evidence. If the District Court intended to make findings regarding Petitioner's citizenship as opposed to his removability, then it should have placed on him the burden of persuasion by a preponderance and considered all of the evidence on each element. So counsel, I had a question for you right off the bat. The way this case was briefed initially was the government argued that the District Court clearly erred in certain factual findings and then part two then got into the whole burden of proof, burden of production, so forth. If we start with the first issue in your brief, the clear error, and we hold that there was no clear error on those four findings of fact, or maybe it was five findings of fact that the District Court made about the grandma and where she was born and where she resided out of wedlock, so forth. How then does the burden shifting become relevant if the District Court found, as a matter of fact, the facts as Mr. Gastone would like them to be? Because of the way the District Court applied the burden. Now the District Court has two sections in its decision, one saying it's findings of fact, where it does make a finding that the grandmother, more likely than not, was born in Mexico. However, it then... The US. I'm sorry, in the United States, Your Honor. That's what the District Court found, was not born in Mexico. It then examines all of the evidence. However, it looks at the evidence the government presented, the seven different pieces of official government documents showing birth in Mexico, and says the government, or this doesn't rebut that finding under the apical legal standard. And so even in its statement regarding findings of fact, the District Court reveals that it's applying the burden shifting scheme and still holding the government or assessing the evidence under a clear and convincing rebuttal standard. And so that's why even if... Can you... I mean, I don't want to dominate the discussion, but can you kind of walk me through that? Because I see, as I look at the District Court's order on page four, it says disputed factual issues, and it has the four questions. And then it just kind of marches through and explains why, in its view, the facts are in the favor of Mr. Costellum. What is left in this case to decide? If the District Court really believes that this woman was born in the United States, why does all this burden shifting matter? Isn't that what this case is ultimately about? Well, it depends on how and what manner did the District Court make that finding. Because first, in its factual findings, I can go and get the exact site where the District Court does say under the appropriate legal standard when it's evaluating that, which shows that it's... Well, let me help you out there. On the next paragraph, just below the one that Judge Owens was referring to, the District Court says the court finds it more likely than not that that is the right standard if it's not then qualified by what the District Court says later. I'm sorry. I didn't follow that answer. I'm not sure I followed that either. I know that there's a lot going on and a lot of mishmash of here. But the District Court does say when it gets to the government's evidence in that factual findings section that it's evaluating that evidence under the appropriate legal standard, which shows that it's considering it in a rebuttal and a clear and convincing standard. Are you arguing that the District Court did not or erroneously applied the standard we held en banc was the standard in Mondaca v. Vega versus Lynch? The District Court applied the Mondaca standard. However, this Court has clarified in cases such as Gisnardo that at the second step, it's a burden of persuasion. It's not a mere burden of production. Mondaca is an en banc case, right? Yes, Your Honor. From 2015. And it seems to me that the District Court pretty clearly followed that case. But this Court has clarified since then that at the second step, that's a burden of persuasion and the District Court applied here a burden of production. So it simply said, basically, have you made out a prima facie case of citizenship, not have you proven every element of by a preponderance in considering all of the evidence. That's what the government disputes here, is what is the actual... Okay, in what case did we limit Mondaca v. Vega that way? That's Gisnardo Reyna, the case the government cited in its recent 28J. It is an unpublished case, but... I don't think that... It's not precedential, so... But that's also something that the Court needs to clarify, is what is the standard at that second step? That's the only case you're relying on as an unprecedented case, to say that our en banc decision was modified or limited? Well, District Courts have been struggling with this issue in these types of cases. And so we'd ask that the Court would continue to clarify that standard. And if you look at what courts require and what the Supreme Court requires in citizenship findings, it's... So, Counsel, if the more likely than not standard, if we thought the District Court was looking at all of the evidence, then if she found it more likely than not that Grandma Vargas was born in El Paso, then the government has to come back with some kind of clear and convincing evidence as to why she shouldn't have citizenship. And that's going to be very difficult if you've made a finding of fact based on a preponderance of the evidence that she was born in El Paso. If the District Court was considering all of the evidence, yes, Your Honor, then we would agree... So your contention is not that she didn't make that finding because it says that she made the finding, but that she didn't do it correctly because she didn't consider the government sent evidence at that time? Yes, Your Honor. Okay. That's a little different than saying... That seems to me not to be saying that there's an amendment to the Mondaca-Vega standard, saying that she didn't apply it correctly. And that's kind of what I was trying to get at in the 28J, is in trying to incorporate what the court has been saying about the Mondaca standard since Mondaca. And admittedly, it does get very confusing. Why don't you tell us why you think this is clear error? Well, that's for three reasons. First of all, the District Court failed to provide any presumption regarding birthplace with regard to the 1929 birth registration or certificate or whatever we may call it. Wait, which one are you talking about? Now we're talking about Maria's, Grandma Maria's 1929 birth certificate or birth registration. Courts, including this one, have said many times that a contemporaneously filed birth certificate is entitled to almost conclusive weight, or it's an almost conclusive presumption of birth. The District Court did not apply that. It simply rejected it because the birth city conflicted with birth certificates that, according to the evidence, Grandma Maria herself obtained later, approximately 70 years later in 1997, versus a 1929 birth certificate made approximately one month after her birth. There's also evidence, also from 1929, a manifest card that confirms Ciudad Juarez. Now the District Court said that the government couldn't explain to her what it was. Right, the manifest card, yes, and that's why I didn't emphasize that very much in our brief. However, it does confirm the same birth city, which is the issue that the District Court didn't like with regard to the later birth certificates. Overall, all of the birth certificates do say Mexico. There's also at least two other pieces of evidence that corroborate Ciudad Juarez as the birthplace. That's Petitioner's mother's 1952 birth certificate and Petitioner's mother's 1968 marriage certificate. So there's at least three pieces of evidence that all corroborate Ciudad Juarez as the birthplace. It's not that the District Court didn't consider that. The District Court did consider that evidence, but didn't find it clear and convincing in light of the other facts and inferences that could be drawn. Right? However, this is evidence that this Court even has said has an almost conclusive nature. It's not unrebuttable, but the District Court applied no presumption or no conclusiveness about it. And there's a number of cases. DeBrown is the major case that this Court has said a contemporaneously filed birth certificate does rebut evidence such as the evidence in this case, such as baptismal certificates, such as witness statements. What she said is she looked at all the evidence and she said the government's evidence is internally inconsistent. And the evidence that supports the birthplace being El Paso is all consistent. Well, that's another issue that we have. That's a clear, clearly erroneous finding. The evidence doesn't all say El Paso. The District Court found that it can... She says the anecdotal evidence regarding family history is both specific and credible. And she says it's Gustillum-Chavez's evidence is consistent. That's what the District Court found. However, the evidence, even as Petitioner agrees, was not consistently saying El Paso. Some of it did say El Paso. Some said Texas generally. And some said nothing more than the United States. This is really... It's really interesting. It's a very interesting time. Even today, El Paso doesn't really have a border, right? A border wall. It does, Your Honor. When we were there, it had a fortress on the border. Finally, El Paso in 1929 was... You didn't really know which side of the... You couldn't really know. People just went back and forth in 1929, around the time of the Cristóbal War. I mean, there's... This story rings so true to me, because just knowing the history... Then why does she have a 1929 Mexican birth certificate? Because we also know from all of the 30% of our calendar, which is immigration cases, that in Mexico, in order to get any kind of benefits whatsoever, you have to have a birth certificate. In order to go to school, you have to have a birth certificate from Mexico. So often, people whose children were born here and they go back to Mexico end up getting... And sometimes they're fake. There's no evidence of that in the state. There's not evidence of that in the record. Mexico didn't make that finding. No, it didn't. But I'm saying... All I'm saying is it rings true, knowing what we know from all of the immigration cases we see, and knowing what El Paso was like in 1929. Oh, then why doesn't she have... Well, Council, normally, you don't ask us questions. I'm just being nice, answering him. I'm making rhetorical arguments here. It's all right. Why does she have... I'm not offended. Why does she have this Mexican birth certificate? Why does she not have a United States birth certificate? Why does she never apply for a U.S. passport? Why does she have none of these documents? These are all factors that... These are questions for the district court, and the district court disagreed, and we have to review that for clear error. So the question is not the rhetorical questions you're asking us. The question is, why did the district court clearly error in making those factual determinations? Because it failed to apply the almost conclusive presumption or nature of a contemporaneously filed birth certificate. It also found consistent evidence that is not consistent regarding the family testimony. It also found or relied on a foundationless sort of guess from the baptismal registry. All right. All of that is clearly erroneous. You wanted to save three. Now you've got two. Yeah. Okay. Thank you. Good morning, Your Honors. May it please the court. Stacy Tolchin for petitioner with my co-counsel, Megan Brewer. And petitioner David Gestalt-Chavez is present with us today in the back. The district court declared petitioner to be a United States citizen after finding that he established by a preponderance of the evidence that he had acquired citizenship from his and that the government could not rebut this by clear and convincing evidence. This was not a showing of merely a burden of production. This was a burden of proof applied under the Mondaca-Vega roadmap. So with regard to the finding of fact, why does the government have a different burden of proof than you did? So under Mondaca-Vega, the burden shifting works where first the government must establish evidence of foreign birth by clear and convincing evidence, which we conceded. Okay. So you're willing to concede there is clear and convincing evidence that Gastelum was born in Mexico. Yes. Then the burden shifts to Gastelum to prove by a preponderance of the evidence through substantial and credible evidence that he was a U.S. citizen. Then under Mondaca-Vega, if he meets that standard, it shifts back to the government to overcome that by clear and convincing evidence. And that's the roadmap we have. It's very strange the way that worked. I understand the Mondaca-Vega context. It seems very strange here in the context of findings of fact that you would concede that the government has clear and convincing evidence of his grandmother's foreign birth. No, no, Gastelum's foreign birth. Right. Just Gastelum. So Gastelum was born in Mexico. I'm sorry. Yeah. Okay. Right. I'm not with you. Yeah. Okay. So it's just acquired citizenship. And so even though he's born in Mexico, he acquired citizenship through grandmother and then mother. And Mondaca-Vega, it affirmed the roadmap that was used by the district court. And the district court did this exact thing where it considers the petitioner's evidence under the preponderance standard separately and then finds that in Mondaca-Vega that he met the preponderance standard, shifts the burden to the government. Then the government's evidence is considered separately. And in Mondaca-Vega, both the district court and in this court found that the government demonstrated by clear and convincing evidence that he was not a citizen. So that's a different case, but it's very clear that that's the roadmap to be followed. So what the government has argued is that that roadmap doesn't apply in cases where the person was not previously found to be a US citizen. And they're relying on a dicta in a case called Sanchez-Martinez, which was also a transfer case, where in dicta the court says, in cases where there's been a prior finding like the issuance of a passport, this higher standard applies of clear and convincing evidence because it's a special factor. We didn't have that prior finding in Mr. Gastelum's case, because he had never been found yet to be a US citizen. So they're arguing that the burden doesn't apply, but there's no case from this court to actually state that as a holding. It's dicta in Sanchez-Martinez. And in fact, there's a Second Circuit case from 1970 in Makani, which applies that same burden-shifting standard in a case where the person was never found to be a US citizen. So if the clear and convincing standard is limited only to those cases where they were previously found to be a citizen, there would be a circuit split between Makani and the court. And it doesn't really make sense anyway, because ultimately, the burden of removal is clear and convincing based on the government at every element along the way. So this is supported by Mondaca-Vega, which repeatedly cites to the Supreme Court's decision in Woodby. Woodby has that clear and convincing standard. It's also supported by the court's decision in Chao, which says every element along the way, the burden carries that burden of proof. So there's no support here for the government's theory that the preponderance standard should apply only and that there shouldn't be a rebuttal standard for clear and convincing evidence. As to the factual issues, obviously, the clear error standard applies, and it's an obviously very deferential standard. I do want to note that the government has only challenged the issue of where Maria de Jesus Vargas, the grandmother, was born, and does not challenge the other findings as far as marriage, living in the US, and the 10 years before petitioner's birth. Now, obviously, there's a very detailed decision from the court on the evidence in the record. And this is not a case where the clear error standard would apply, because ultimately, the court can only overturn if there's a definite and firm conviction that a mistake has been committed. And that only applies if there are not two permissible views of the evidence, which is not the case here. The government challenges the district court's decision and reliance on the birth certificate and the marriage certificate. I do want to note that the government's opening brief does not challenge these evidentiary issues. It's only raised on the second brief, which is the cross appeal. So I do think any challenge to the court's finding regarding the marriage and birth certificate would be waived. I also want to note that I don't know if this was clear in the brief. I didn't follow that. So you think that some evidence needs to be kicked out? Do you think it's been waived? Challenges as to which? We have a couple of birth certificates, so. Right. So Judge Gee relied, sorry, the government presented in trial the birth certificate and marriage certificate for petitioner's mother, Lusalina Chavez. Judge Gee discounted that evidence for various reasons. When the government appealed and filed the opening brief here, it did not challenges to Judge Gee's findings. You're talking about the birth registration for Luz, the 1952. 1952 and then the marriage certificate. 1968 marriage certificate. Right, exactly. Okay. So tell me about the birth registration in 1929. So the birth registration was issued by Sacred Heart Church in El Paso, which is like a block and a half from the border. No, that would be the baptismal record. Oh, sorry, the baptismal. Okay. So the, sorry about that. The birth registration was issued one month after Maria de Jesus' birth. It is not signed by a clerk or any agency official. We showed that in the brief. It says in Spanish, doy fe, which is an attestation and then it's blank. So we did challenge the admissibility of that document and ultimately Judge Gee found that went to the weight of the evidence. So this is relevant for purposes of this court's decision in Murphy. Murphy looks at whether this presumption of alienage applies if there's evidence of foreign birth, but says that the presumption only applies if it's evidence. In this case, the 1929 record is not uncontradicted and it's not trustworthy. And how is it not uncontradicted or not, or contradicted? So first of all, it's not signed, right? Second of all, it's contradicted by the San Luis Potosi 1997 birth certificate. So that's issued 68 years later. We have a very slight difference between ciudad Juarez and Villa Juarez. That is, they're both Juarez. They're in very different states and I understand in very different places. Of course, the contradiction there is only if the city of birth is important, which it's not. It's only the country of birth that's in question and that's consistent. Right. But that's like saying somebody was born in the United States. Obviously, in order to prove birth by clear and convincing evidence, there actually has to be proof of that. And so you can't be born in two places. And Petitioner doesn't argue that the 1997 one is correct. The point of the 1997 birth certificate, which was done way before this trial started, was that Maria de Jesus Vargas wanted a Mexican passport. And if she had believed she was born in ciudad Juarez, she easily could have obtained that just as Petitioner's wife did, Carolina Lopez, in this case, just as DHS did. But what that shows is her frame of mind and her understanding that she wasn't able to prove her Mexican citizenship. And so she went ahead and then got the one from San Luis Potosi. Because that was done so far before this trial, I really think that does contradict the evidence of at least her understanding of where she was born. But her daughter-in-law also testifies that she thought that it was fraudulent, that it was for purposes of obtaining a Mexican passport. Right. So if we consider that fraudulent, and there's very good evidence that it is, it's obtained 68 years later. It's inconsistent with all of the other evidence from Mexico and the manifest card issued by the United States in 1929. Then we toss that out. There's no problem. Then the evidence is quite consistent out of Mexico. Well, but it's not, because it goes again to her state of mind and her understanding. And there's all of the statements that went into the record. But her daughter-in-law says it's fraud, that she obtained it fraudulently. Oh, no, no, I understand that. But it goes to Maria de Jesus's understanding of the place of her birth, right? Oh, it might not at all. If she obtained it fraudulently, she may have gone to some place that was simply convenient for her. Well, she was told, and that's in the record, that that's why she got, right, Carolina Lopez's deposition and testimony states that that was the reason for obtaining the passport. And Maria de Jesus told Carolina Lopez in 2014 that she was born in El Paso, and that was admitted by Judge Gee as testimony. So again, there is not an uncontradicted birth record. And again, I want to reiterate that it was unsigned, and that there's a document from the Department of State that addresses foreign evidence of birth, and says specifically that basically people would just go, say where they were born, there was no verification, and that birth registrations were issued. So under a scenario where this is the Cristero War, the baby is born in El Paso, which is a block and a half from the border. The parents had the full intention to raise the baby with the rest of the family in Mexico. Then it makes sense that the father would register the Mexican birth certificate. I also want to note that the record has no entry or showing of a manifest card before the November of 1929. So there's no record of a baby Maria de Jesus coming in before the Sacred Heart Baptism. So it does appear from the record as it exists that the first entry was in November, if that's what the manifest card was for. I also just wanted to briefly get to the reinstatement of removal, which the court need not address if it affirms Judge Gee's order. Yeah, and I don't understand why they did reinstate the removal order. If we affirm Judge Gee, what happens? It just disappears? I think the court vacates it. There's a case we found, Anderson, from the court. Let's see. All right, 673 Fed Third 1089, where there is a finding of U.S. citizenship, and then the removal order is vacated. Obviously, Judge Gee could not do that, because it was not a petition for review. But I think that's appropriate for the court. And I just in my remaining time do want to mention that this- I guess I have a question about the birth certificate. So where did Judge Gee find that it was not signed? In the- there's a second order from the court. What's in the second order? This was on- sorry, let me just find that for you. She- there were a motion for summary judgment, the denial of motion for summary judgment. And that is in the record, page 26 of the- sorry, page 27 to 35 on the initial records at ECF 26. We had originally moved to exclude that 1929 record. The findings, the fact, and conclusions of law, does she refer to it in there? I don't believe that she refers to it as unsigned. Right. In the denial of motion for summary judgment, she said that ultimately it goes to the weight of the evidence if it's unsigned. But she didn't consider that in the findings, the fact, and conclusions? I mean, I'm assuming that she incorporated it in her past decision. Well, it's- well, but she didn't refer to it when she talked about it here. Okay, yes. And where is it not signed? Oh, let me get you- So I have the translation, I have the Spanish transcription, and I have the written document. So I'm looking at the R53 for the original. Right, so if you look- And 48 are the Spanish and English translations. Right. Okay, so if you go to page 48, which is, I believe, the original document. The 48 is the English translation. Okay, go to- 53 is the original. 53. Actually, go to page 51. Okay. And you see at the very bottom of the Spanish, there's the Vicente Vargas and then the names right there. Okay. And then if you go to the line above, this is- it kind of looks like an at symbol, but it's Doyfe. That is where the attestation would be. And that's in the English translation at page 50 as well. So normally, and this was all raised in the motions, there would be a clerk signature there. And there's just not one here. And I'm over my time. I just want to mention- Not over your time. Oh, I'm not, okay. When it turns red, you're over your time. Thank you. I do just want to mention that in the reinstatement order, this was an acquittal by a trial by jury on the defense of acquired citizenship. And less than a month later, ICE goes to reinstate.  He was acquitted. Okay, on this evidence? Yes. Okay. Yes. So what happened was we actually tried to cancel the ICE detainer in the case, submitted all the evidence. But less than a month after the acquittal, ICE went ahead and arrested him, reinstated him, and tried to whisk him off that day to Mexico. We filed a petition for review to stop the deportation. When we got the record, the record shows that the form I-213, which is the background document, has nothing about the acquittal. Even though it says, petitioner says he acquired US citizenship, nothing about the acquittal on there. And in the record before the court, the only evidence of alienation they submitted for petitioner's grandmother, Maria de Jesus Vargas, is an untranslated Spanish document that says, sin valor, which we translated to mean without value. And so based on all of that, they tried to whisk him away that day. So at a minimum, if the court doesn't affirm the district court's finding, we believe that the reinstatement should be vacated as an abuse of discretion. And there's a 2009 memorandum regarding claims to US citizenship that we rely on in that record. I'll leave my remaining time. Great. Thank you. All right. Thank you very much, counsel. Mr. George, you have two minutes. Thank you, Your Honor. As my opponent said during her statement, Mandaca-Vega is about the burden of removal. And so if Mandaca-Vega's burden shifting scheme is the right scheme or framework to has to do with removal. And so if the district court did not err in any way, the only consequence is that petitioner's not removable. And any citizenship findings that the district court made, this court should vacate because it's not about citizenship. Turning to the 1929 birth certificate, even though the actual document from 1929 is not signed, the Mexican government in 2014 certified a copy of that document, which is that certification is in the record. And so the Mexican government is still treating that document as valid. And that's another document that confirms the 1929 birth in Ciudad Juarez. Unless the court has any other questions. I'm sorry, one more point. The criminal acquittal by itself does not make any statement about citizenship, as the Supreme Court has said, as this court has said. And in another case we cited in the 28-J, the burdens are simply on different parties. And so simply because one is acquitted doesn't mean that one has proven the opposite. It's not proven innocence, for example. No, that's certainly true. But having been an AUSA in San Diego for a long time, I can tell you that rarely happens. You rarely get an acquittal in these cases. So I mean, I think I agree it's a different standard, but it is unusual, you would agree. Yes. All right. But however, the jury could have decided, this was a general jury verdict. And so the jury could have found any one element. I think we know it wasn't because he wasn't found in the United States after deportation. I think we know that the jury found that. But here, for example, there's four different things the jury had to have found or could have relied on. It could have, any one of those would have been enough for an acquittal. That being said, I know I'm over my time. Thank you, counsel. Thank you. Gastelum versus Barr will be
judges: Wardlaw, Bybee, Owens